NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LORENZO OLIVER, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 2:13-cv-1881 (JLL) (JBC) |
| | : | |
| DEBRA ROQUET, Psy.D., | : | |
| | : | |
| Defendant. | : | |
| | : | |

<u>JOSE L. LINARES, U.S.D.J.</u>:

This matter comes before the Court upon the Motion of Defendant Debra Roquet, Psy.D. ("Defendant") to Dismiss the Complaint of Plaintiff Lorenzo Olivier ("Plaintiff") and/or for Summary Judgment, and the Motion by Plaintiff to Defer Ruling on Defendant's Motion for Summary Judgment. Pursuant to FED. R. CIV. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Defendant's Motion to Dismiss is **granted in part and denied in part**, and Plaintiff's Motion to Defer Ruling on Defendant's Motion for Summary Judgment is **denied**.

## I.    <u>BACKGROUND[1]</u>

Plaintiff is a civilly committed resident at a Special Treatment Unit ("STU") in Avenel, New Jersey. Plaintiff was trained and certified as a paralegal by the Department of Corrections

---

[1] The facts from this section are taken from the parties' pleadings.

Education Department in 1991. Plaintiff is also the editor of a newsletter titled "Residents Legal Association Bulletin News Letter." Defendant is a psychologist at the STU.

Plaintiff has assisted a number of STU residents in the writing and filing of their legal actions. In December 2011, Plaintiff filed a complaint in federal court on behalf of STU resident Douglas Minatee. Dr. Nicole Paolillo, a member of the Treatment Program Review Committee ("TPRC") at the STU, was a defendant in that case. Plaintiff states that Defendant is also a member of the TPRC, and a friend of Paolillo. Julia Kireev, head of the Therapeutic Community at the STU, was also a defendant in that case.

Plaintiff states that in August, 2011, he released his first newsletter. In that newsletter, he complained that the STU residents were being deprived of numerous rights to which they were legally entitled. Plaintiff claims that after he sent the newsletter to the Governor of New Jersey, the State created a new law that prevented STU officials from improperly removing welfare funds from the STU Residents Welfare Fund. Plaintiff also states that in April 2012, he began to hang leaflets in various rooms at the STU, advising residents not to accept a settlement that was offered in a case that a number of them were involved in. Plaintiff asserts that he gathered over 223 signatures and submitted a petition to the Court requesting that the settlement be rejected and that Barbara Moses, Esq. be removed as defense counsel. Plaintiff contends that Barbara Moses was subsequently removed as counsel.

Plaintiff states that the treatment program at the STU involves a number of phases. He asserts that the STU Resident Handbook provides various goals and expectations involved with completing phase two, and that he has completed a number of these goals. Plaintiff states that his Treatment Team reported his progress to the TPRC and recommended that he move to phase three. On June 14, 2012, Defendant issued a report from the TPRC denying Plaintiff progression

2

to phase three. In her report, Defendant stated, among other things, that Plaintiff is legalistic and spends a great deal of time and energy on his role as a paralegal. Plaintiff claims that Defendant has allowed other residents who have completed less work than him to move to phase three.

Plaintiff filed a Complaint and a Request to Proceed Informa Pauperis on March 25, 2013 (ECF No. 1). Plaintiff's Request to Proceed Informa Pauperis was granted on April 1, 2013 (ECF No. 2). Defendant filed a Motion to Dismiss and/or for Summary Judgment on September 23, 2013 (ECF No. 12).[2] Plaintiff filed a Motion to Defer Ruling on Motion for Summary Judgment[3] and an Opposition on November 28, 2013 (ECF No. 19). Defendant filed a Letter Reply on December 6, 2013 (ECF No. 16).

## II.    LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). But, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 410, 1429 (3d Cir. 1997). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a

---

[2] This Court declines to convert this Motion to Dismiss into one for Summary Judgment. The TPRC report submitted by Defendant is relied on in the Complaint and can therefore be considered by this Court. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that "a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment'" (citation omitted)). However, this Court does not find that the certification from Dr. Merill Main provided by Defendant is integral to or relied on in the Complaint. As such, this certification will not be considered.

[3] Because this Court is not converting Plaintiff's Motion to Dismiss into one for Summary Judgment, Plaintiff's Motion to Defer Ruling on Motion for Summary Judgment is moot, and is therefore denied.

cause of action will not do.'"  Ashcroft v. Iqbal, 556 U.S. 662, 6782 (2009) (quoting Twombly,

550 U.S. at 555).  Thus, a complaint will survive a motion to dismiss if it contains "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal,

556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

## III.   DISCUSSION

### A.  Counts One and Two

Counts one and two allege that Defendant violated Plaintiff's constitutional right of

access to courts by denying him a promotion to phase three of treatment because Plaintiff i)

assisted other STU residents in the writing and filing of their legal documents, and ii) initiated a

number of his own legal actions. In Bounds v. Smith, 430 U.S. 817, 828 (1977), the United

States Supreme Court held that " the fundamental constitutional right of access to courts requires

prison authorities to assist inmates in the preparation and filing of meaningful legal papers by

providing prisoners with adequate law libraries or adequate assistance from persons trained in

the law."[4] However, the right of access to courts is not unlimited, and Bounds only requires that

inmates be provided with the tools they need "in order to attack their sentences, directly or

collaterally, and in order to challenge the conditions of their confinement." Lewis v. Casey, 518

U.S. 343, 355 (1996). Further, a plaintiff must show that he suffered an "actual injury," which is

defined as "an 'instance in which an inmate was actually denied access to the court.'" Hudson v.

Robinson, 678 F.2d 462, 265 (3rd. Cir. 1982) (quoting Kershner v. Mazurkiewicz, 670 F.2d 440,

---

[4] Although Plaintiff is not a prisoner, the Third Circuit has analyzed the rights of STU plaintinffs in the same way as prisoners. See Rivera v. Rogers, 224 F. App'x 148, 150-51 (3d Cir. 2007) ("Given that [the plaintiff] has been convicted of a crime and is being detained in the [STU] because of his classification as a sexually violent predator . . . his status is similar to that of a prisoner and we agree with the District Court's decision to proceed with its analysis of his First Amendment claim by looking to case law interpreting a prisoner's rights.").

444 (3d Cir. 1982)). Therefore, the right of access to courts "is ancillary to the [plaintiff's] underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Christopher v. Harbury, 536 U.S. 403, 415 (2002).

Here, Plaintiff's claims fail because he does not allege any underlying claim that was frustrated due to the actions of Defendant. Instead, counts one and two of the Complaint state that Plaintiff's right of access to courts claims are based on the fact that Defendant denied Plaintiff a promotion to phase three of treatment. Such an allegation fails to show how Defendant denied Plaintiff access to the courts. Further, even if Plaintiff had properly alleged that Defendant denied him access to the courts, he has not shown that he has suffered an "actual injury," because he has not demonstrated "that a 'nonfrivolous' and 'arguable' claim was lost because of the denial of access to the courts." Hartmann v. O'Connor, 415 F. App'x 350, 352 (3d Cir. 2011). Accordingly, counts one and two of the Complaint are dismissed without prejudice.

**B.  Count Three**

Count three alleges that Defendant retaliated against Plaintiff by denying him access to phase three of treatment due to the legal newsletter that Plaintiff wrote and because Plaintiff filed a petition to remove the defense counsel in a class action that a number of STU residents were involved in. In order to state a claim for retaliation, "a plaintiff must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of the prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action." Bistrian v. Levi, 696 F.3d 352, 376 (3d Cir. 2012) (internal quotations and citation omitted).

Here, Plaintiff's Complaint satisfies all three elements of a retaliation claim. First, Defendant concedes that Plaintiff was engaged in constitutionally protected conduct, namely the

exercise of his First Amendment rights. Second, Plaintiff has alleged the existence of an adverse action. An adverse action is an action that is "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Defendant argues that because Plaintiff has continued to engage in litigation in the federal courts, he clearly has not been deterred from asserting his rights. However, this test is objective, and thus "[t]he accurate inquiry is whether [the defendant's conduct] would deter a person of ordinary firmness from exercising his or her First Amendment rights, not whether [the conduct] actually deterred [the plaintiff] from speaking." Citizens For A Better Lawnside, Inc. v. Bryant, No. 05-4286, 2007 WL 1557479, at *6 (D.N.J. May 24, 2007). See also Brooks v. Smith, No. 3:CV-04-2680, 2007 WL 3275266, at *9 (M.D. Pa. Nov. 6, 2007) (stating that "the test for adverse action is objective, not subjective, and whether the plaintiff was actually deterred by the defendant's retaliatory acts is not dispositive"); Fiore v. Holt, 435 F. App'x 63, 68 (3d Cir. 2011) (stating that whether a plaintiff in a retaliation case is "actually deterred" is "irrelevant"). As completion of the program at the STU could ultimately lead to the discharge of a resident, any hindrance of this progress could clearly have a great impact on the resident's life. Therefore, although Defendant may not have actually been deterred by Plaintiff's alleged conduct, this Court finds that the denial of promotion to phase three could deter an ordinary person from exercising his First Amendment rights.

Finally, this Court finds that Plaintiff has alleged sufficient facts to allow the Court to draw the reasonable inference that his protected conduct was a motivating factor in Defendant's decision not to promote him to phase three. For example, Plaintiff asserts that he completed numerous goals involved with progressing to phase three, and claims that residents who completed fewer goals than he did were promoted. Further, Plaintiff's exercise of his First

6

Amendment rights were explicitly discussed in the report from the TPRC. Therefore, because the Third Circuit has indicated that a plaintiff's burden regarding element three is very low at the pleading stage, this Court finds it premature to dismiss Plaintiff's retaliation claim. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (stating that "the word 'retaliation' in [the plaintiff's] complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him"); Mack v. Yost, 427 F. App'x 70, 73 (3d Cir. 2011) (stating that "[the plaintiff's] burden at the pleading stage is merely to state a prima facie case by alleging that his protected conduct was a 'substantial or motivating factor' for [the adverse action]"); Bendy v. Ocean Cnty. Jail, 341 F. App'x 799, 802 (3d Cir. 2009) ("To state a claim for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred." (internal quotations and citation omitted)). Accordingly, count three may proceed at this time.

### C. Court Four

Count four alleges that Defendant violated Plaintiff's rights under New Jersey Patients' Bill of Rights, N.J.S.A. 30:4-24.2 by calling Plaintiff "legalistic" and coercing Plaintiff to stop assisting other STU residents with their legal actions (Compl. ¶ 30). This claim fails because N.J.S.A. 30:4-24.2 does not apply to sexually violent predators, as N.J.S.A. 30:4-27.34 provides the following:

> Notwithstanding the provisions of [N.J.S.A. 30:4-24.2] or any other law to the contrary, the rights and rules of conduct applicable to a person subject to involuntary commitment as a sexually violent predator pursuant to [N.J.S.A. 30:4-27.24] shall be established by regulation promulgated jointly by the Commissioner of Human Services and the Commissioner of Corrections, in consultation with the Attorney General. The regulations promulgated under this subsection shall take into consideration the rights of patients as set forth in [N.J.S.A. 30:4-24.2], but shall specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators. In developing these regulations, the commissioners shall give due regard to security concerns and safety

of the residents, treatment staff, custodial personnel and others in and about the facility.

See also In re Civil Commitment of R.X.K., No. A-3362-04T2, 2005 WL 3555711, at *4 (N.J. Super. Ct. App. Div. Dec. 30, 2005) ("[I]t is evident the Legislature has recognized that the rights of patients set forth in N.J.S.A. 30:4-24.2 cannot be applied in blanket fashion when dealing with sexually violent predators."). Thus, while the rules pertaining to sexually violent predators are to take N.J.S.A. 30:4-24.2 into consideration, N.J.S.A. 30:4-24.2 itself is not applicable.  Accordingly, Plaintiff has failed to state a facially plausible claim pursuant to the New Jersey Patients' Bill of Rights, N.J.S.A. 30:4-24.2; such claim is therefore dismissed with prejudice.

### D.  Count Five

Count five alleges a violation of Plaintiff's right of access to courts and his right to freedom of speech in violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2. Claims under the NJCRA are "construed . . .  in terms nearly identical to its federal counterpart." Chapman v. N.J., No. CIV. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009). As discussed above, Plaintiff right of access to courts claim is dismissed without prejudice, and Plaintiff's retaliation claim under the First Amendment may proceed. As such, Plaintiff's right of access to courts claim under the NJCRA is dismissed without prejudice, and Plaintiff's retaliation claim under the NJCRA may proceed at this time.


## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Docket Entry No. 12] is **granted in part and denied in part** and Plaintiff's motion to Defer Ruling on Defendant's Motion for Summary Judgment [Docket Entry No. 19] is **denied**.

Counts one and two are dismissed *without prejudice*. Count three may proceed. Count four is dismissed *with prejudice*. The right of access to courts claim under the NJCRA in count five is *dismissed without prejudice*. The retaliation claim under the NJCRA in count five may proceed.

Plaintiff may filed an Amended Complaint **on or before May 29, 2014** to cure the pleading deficiencies discussed above. Plaintiff's failure to do so by such date may result in dismissal of counts one, two, and the right of access to courts claim in count five *with prejudice,* upon application by the Defendant.

An appropriate order follows this Opinion.

s/ Jose L. Linares

Date: April 14, 2014                                  Jose L. Linares, U.S.D.J.

9