NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORENZO OLIVER,<br><br>　　　　Plaintiff,<br><br>v.<br><br>DEBRA ROQUET, Psy.D.,<br><br>　　　　Defendant. | Civil Action No. 2:13-1881 (JLL) (JAD)<br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court upon the Motion of Defendant Debra Roquet, Psy.D. ("Defendant") to Dismiss the Complaint of Plaintiff Lorenzo Oliver ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 28.) The Court has considered the submissions made in support of and in opposition to Defendant's Motion, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. Based on the following and for the reasons expressed herein, Defendant's Motion to Dismiss is **granted in part and denied in part**.

**I.　BACKGROUND**

Plaintiff is a civilly committed resident at a Special Treatment Unit ("STU") in Avenel, New Jersey. ("Am. Compl.," ECF No. 26 ¶ 1.) Plaintiff was trained and certified as a paralegal by the Department of Corrections Education Department in 1991. (Id. ¶ 3.) Plaintiff is also the editor of a newsletter titled "Residents Legal Association Bulletin News Letter." (Id.) Defendant is a psychologist at the STU, and a member of the Treatment Progress Review Committee ("TPRC"). (Id. ¶ 4.)

1

Plaintiff has assisted a number of STU residents in the writing and filing of their legal actions. (Id. ¶¶ 15-16.) For example, in December 2011, Plaintiff filed a complaint in federal court on behalf of STU resident Douglas Minatee. (Id. ¶ 10.) Dr. Nicole Paolillo, a member of the TPRC, and Julia Kireev, head of the Therapeutic Community at the STU, were defendants in that case. (Id.) Plaintiff asserts that Defendant and Paolillo are friends. (Id. ¶ 13.)

Plaintiff states that in August 2011, he released his first newsletter, in which he complained that STU residents were being deprived of numerous rights to which they were legally entitled. (Id.) Plaintiff claims that after he sent the newsletter to the Governor of New Jersey, the State created a new law that prevented STU officials from improperly removing welfare funds from the STU Residents Welfare Fund. (Id. ¶ 24.) Plaintiff also states that in April 2012, he began to hang leaflets in various rooms at the STU, advising residents not to accept a settlement that was offered in a case that a number of them were involved in. (Id. ¶ 25.) Plaintiff asserts that he gathered over 223 signatures and submitted a petition to the Court requesting that the settlement be rejected and that Barbara Moses, Esq. be removed as defense counsel. (Id.) Plaintiff contends that Moses was subsequently removed as counsel. (Id.)

Plaintiff contends that the treatment program at the STU involves a number of phases. (Id. ¶ 17.) He asserts that the STU Resident Handbook provides various goals and expectations involved with completing phase two, and that he has completed a number of these goals. (Id. ¶¶ 18-19.) Plaintiff states that his Treatment Team reported his progress on the goals as well as a number of positive behavioral changes to the TPRC. (Id. ¶ 20.) On June 14, 2012, Defendant issued a report from the TPRC recommending that Plaintiff remain in phase two of treatment. (Id. ¶ 6.) In her report, Defendant stated, among other things, that Plaintiff is legalistic and spends a great deal of time and energy on his role as a paralegal. (Id. ¶¶ 6-7.) Plaintiff claims that

2

Defendant has allowed other residents who have completed less work than him to move to phase three. (Id. ¶ 9.)

Plaintiff filed a Complaint against Defendant on March 25, 2013. (ECF No. 1). Counts one and two alleged a violation of Plaintiff's constitutional right of access to courts, count three alleged First Amendment retaliation, count four alleged a violation of Plaintiff's rights under New Jersey Patients' Bill of Rights, N.J.S.A. 30:4-24.2, and count five alleged a violation of Plaintiff's right of access to courts and his right to freedom of speech in violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 (the "NJCRA"). Defendant filed a Motion to Dismiss and/or for Summary Judgment on September 23, 2013. (ECF No. 12). On April 14, 2014, this Court dismissed counts one and two without prejudice, allowed count three to proceed, dismissed count four with prejudice, dismissed the right of access to courts claim in count five without prejudice, and allowed the retaliation claim in count five to proceed. (ECF No. 22.) Plaintiff filed an Amended Complaint on June 16, 2014 alleging (i) retaliation under the First Amendment, (ii) a violation of New Jersey's Administrative Code 10:36A-2.1, and (iii) retaliation under the NJCRA. Defendant filed the instant Motion to Dismiss on July 14, 2014. (ECF No. 28.) Plaintiff filed an Opposition on August 11, 2014. (ECF No. 29). Defendant filed a Reply on August 27, 2014. (ECF No. 32.)

## II. STANDARD OF REVIEW

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

In determining the sufficiency of a complaint, the Court must accept all well-pleaded

factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. Id.

### III. DISCUSSION

#### A. First Amendment Retaliation

Count one of the Amended Complaint alleges that Defendant retaliated against Plaintiff in violation of the First Amendment by denying him access to phase three of treatment after Plaintiff wrote articles in a legal newsletter and filed a petition to remove the defense counsel in an action that a number of STU residents were involved in.

Defendant first asserts that Plaintiff has failed to state a claim for First Amendment retaliation under Rule 12(b)(6). As this Court decided in its prior opinion that Plaintiff has satisfied Rule 12(b)(6), it will not revisit this issue. Second, Defendant argues that this claim should be dismissed on the basis of qualified immunity. Plaintiff argues that Defendant is barred from making this argument under Federal Rule of Civil Procedure 12(g)(2), which provides: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Under Rule 12(h), a party may raise a defense not included in a prior motion in (i) any pleading allowed under Rule 7(a), (ii) in a motion for judgment on the pleadings under Rule 12(c), or (iii) at trial.

Defendant argues that Rule 12(g)(2) is not applicable here because an amended complaint was filed and thus Defendant is entitled to assert defenses not raised in its motion to dismiss the

original complaint. However, this District has stated that "[w]ith respect to amended complaints and Fed. R. Civ. P. 12(g)(2), even if a plaintiff files an amended complaint . . . [it] does not revive the right to interpose defenses or objections which might have been made to the original complaint." Slutsky v. Guadagno, No. 10-5331, 2013 WL 5523688, at *5 (D.N.J. Oct. 3, 2013) (internal quotations and citation omitted). Here, the defense of qualified immunity could have been raised in Defendant's first motion to dismiss. Although this Court notes that "[m]any courts . . . believe that taking such a hypertechnical approach [to Rule 12(g)(2)] does not make sense" and "have permitted successive motions to dismiss to avoid unnecessary delay," In re Opus E., L.L.C., 480 B.R. 561, 569 (Bankr. D. Del. 2012) (citing cases), Defendant has not pointed to case law that is binding on this Court that supports such a conclusion.[1] As such, this Court will not act in contravention to the language of Rule 12(g)(2). Further, because the portion of Plaintiff's Opposition that addresses qualified immunity focuses only on Rule 12(g)(2), the Court finds it improper to reach the merits of the issue at this time.[2] To the extent that Defendant wishes to raise a qualified immunity defense, she may do so in a motion for judgment on the pleadings pursuant to Rule 12(c) or a motion for summary judgment pursuant to Rule 56(a). This

---

[1] Defendant quotes the following language used by this Court to support his proposition: "Once an amended complaint is filed, the original complaint no longer performs any function in the case . . . ." Aruanno v. Green, No. 09-1542, 2012 U.S. Dist. LEXIS 123394, at *24 n. 4 (D.N.J. Aug. 29, 2012). However, Defendant takes this language out of context, as this Court was simply explaining that a Plaintiff cannot use facts alleged in an original complaint to survive a motion to dismiss an amended complaint if such facts were not included in the amended complaint. A more complete reading of this Court's language in Aruanno is as follows:

> This Court will not try to piece together the allegations in the Complaint, Amended Complaint, and second amended complaint, like a puzzle. Once an amended complaint is filed, the original complaint no longer performs any function in the case and cannot generally be utilized to cure defects in the amended complaint.

Id.

[2] While it is arguable that Plaintiff should have addressed the merits of Defendant's qualified immunity argument in his Opposition, this Court will not fault Plaintiff, who is *pro se*, for solely relying on Rule 12(g)(2), as Plaintiff is correct in arguing that Defendant's motion violates this rule.

5

will both alleviate the Rule 12(g)(2) issue and allow Plaintiff to respond to Defendant's qualified immunity defense.

Accordingly, count one of the Amended Complaint may proceed.

**B. NJCRA Retaliation**

Count three of the Complaint alleges retaliation under the NJCRA. The same issues discussed above with respect to Plaintiff's First Amendment retaliation claim apply to Plaintiff's NJCRA retaliation claim. Accordingly, count three of the Amended Complaint may proceed.

**C. N.J.A.C. 10:36A-2.1**

Count two of the Amended Complaint alleges that Defendant "use[d] treatment to modify and vary a civil right of [P]laintiff's . . . in violation of [N.J.A.C.] 10:36A-2.1." (Am. Compl. ¶ 27.)

The Sexually Violent Predator Act ("SVPA") specifically exempts sexually violent predators from the New Jersey Patients' Bill of Rights, N.J.S.A. 30:4-24.2 by providing the following:

> Notwithstanding the provisions of [N.J.S.A. 30:4-24.2] or any other law to the contrary, the rights and rules of conduct applicable to a person subject to involuntary commitment as a sexually violent predator pursuant to [N.J.S.A. 30:4-27.24] shall be established by regulation promulgated jointly by the Commissioner of Human Services and the Commissioner of Corrections, in consultation with the Attorney General. The regulations promulgated under this subsection shall take into consideration the rights of patients as set forth in [N.J.S.A. 30:4-24.2], but shall specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators. In developing these regulations, the commissioners shall give due regard to security concerns and safety of the residents, treatment staff, custodial personnel and others in and about the facility.

N.J.S.A. 30:4-27.34. In accordance with this statutory mandate, N.J.A.C. 10:36A was enacted. See 38 N.J. Reg. 1984(a). Plaintiff seeks relief under N.J.A.C. 10:36A-2.1, which provides:

> Subject to the Sexually Violent Predator Act (SVPA), and any other provisions of law and the Constitution of New Jersey and the United States, a resident shall not

6

> be deprived of a civil right solely by reason of receiving treatment under the provisions of the SVPA. Treatment shall not modify or vary legal or civil rights including but not limited to, the right to register for and to vote in elections, or rights relating to the granting, forfeiture, or denial of a license, permit, privilege, or benefit pursuant to any law, except those rights related to providing a safe, secure facility or any appropriate concern.

N.J.A.C. 10:36A-2.1(a). Defendant asserts that no private right of action exists under this statute.

When a statute does not expressly provide a private right of action, New Jersey courts "have been reluctant to infer" such a right. R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 773 A.2d 1132, 1142 (N.J. 2001). The factors used by courts to determine whether a statute confers an implied private right of action include whether:

> (1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy

Id. at 1143. While courts give weight to all three factors, "the primary goal has almost invariably been a search for the underlying legislative intent." Id. (quoting Jalowiecki v. Leuc, 440 A.2d 21, 26 (N.J. Super. Ct. App. Div. 1981)).

Here, N.J.A.C. 10:36A-2.1 does not expressly provide a private right of action, and there is no evidence that the Legislature intended to create an implied right. In fact, it is telling that the SVPA specifically exempts sexually violent predators from New Jersey Patients' Bill of Rights, recognizing that the Depart of Humans Services and the Department of Corrections are specially equipped to handle the needs of these individuals. Further, N.J.S.A. 30:4-27.34 provides that the purpose of a statute enacted by the DHS and DOC is to address the "security concerns and safety of the residents, treatment staff, custodial personnel and others in and about the facility." This purpose does not suggest that a private cause of action was intended. Finally, there is not a single case that cites to N.J.A.C. 10:36A-2.1, much less one that holds that a private cause of action

7

exists under this statute.

Accordingly, count two of the Amended Complaint is dismissed *with prejudice*.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **granted in part and denied in part**. An appropriate order follows this Opinion.

                                                                 Jose L. Linares, U.S.D.J.

Date:         August 28, 2014
Original:   Clerk's Office
cc:          Hon. Joseph A. Dickson U.S.M.J.
             All Counsel of Record
             File